Mr. Dabney, may it please the Court, Section 3 of the Uniform Fraudulent Transfer Act provides that a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. This appears to be the first case in which a debtor has been deemed insolvent under the UFTA based on proof that admittedly does not satisfy— Insolvent under the what? I'm sorry? Insolvent under what? Insolvent under the UFTA, Uniform Fraudulent Transfer Act. Could you use real words, please? Yes. You heard me ask the same thing in the first case. My apologies, Your Honor. We are generalists. Funny initialisms used only in a small specialty are wasted in a court of appeals. I'm referring to 740 ILCS 160-3A, the definition of insolvent. This Court has held again and again and again that insolvent prescribes assets being less than the sum of all of the debtor's debts. In this case, the bankruptcy court's findings were that at year-end 2012, at year-end 2013, a period spanning the payments at issue in this case, this debtor had assets whose fair valuation was comfortably higher. You're now pursuing the argument that's in your brief that only the balance sheet determines whether an entity is insolvent. How did you make this argument in the bankruptcy court? The argument was made in the bankruptcy court through expert testimony, which— No, you make arguments in the bankruptcy court by filing legal documents, not by expert testimony. You're well aware that your adversary has said that the argument you're now making was either forfeited or waived in the bankruptcy court. Your reply brief says it was not, but doesn't tell us how and where it was raised in the bankruptcy court. That's what I'm asking you to focus on now. Okay. The SEFCU joined issue on whether or not the debtor was insolvent. It was the trustee's burden to prove if it was going to proceed on a theory that the debtor was insolvent, not that the debtor had unreasonably small capital, not that the debtor would lack sufficient property to pay its debts. It was the trustee's burden to prove— I wish you would deal with my question. And so the way we presented evidence through an expert— No, you have to make a legal argument. You file a piece of paper saying the only thing that matters is the balance sheet. Where did you say that? Your adversary says you contended in the bankruptcy court that there were three different tests, that that was your own argument in the bankruptcy court. On appeal, you are saying there was only one permissible test. And I'm asking where you contended in the bankruptcy court that there was only one legally permissible test. The pleadings and filings in the bankruptcy court did use the word insolvent in an errant way to characterize financial conditions that did not meet the statutory condition of insolvent. So I will concede that both sides' experts used accounting jargon. I am not asking about experts. I'm asking whether a lawyer representing your client ever told the bankruptcy judge that as a matter of law, there was only one legal standard. Was that ever argued to the bankruptcy judge? I cannot say that that statement was made. All right. I have to assume from the lack of any citations in your reply brief and what you're saying now is that the answer is no. This argument was never made to the bankruptcy judge. And now the follow-up question is how can it be made today? The argument to the bankruptcy court was that the debtor was solvent under any definition of insolvent. And the difference- Look, I wish you would deal with my question. I said we are now taking it as given that this argument that there's only one legal test was never made to the bankruptcy judge. How can it be made today in the Seventh Circuit? It depends on what insolvent is meant to mean. The parties litigated Sections 6 and 5 of the Uniform Fraudulent Transfer Act. And what the parties argued to the district court is they used insolvent as a shorthand for the financial conditions prescribed in Sections 5A and 6 of the Uniform Fraudulent Transfer Act. The law is the law. Counsel, I am asking a technical legal question about the nature of forfeiture in federal litigation. When you argue to the trial court that any of three tests should be used, when is it permissible to contend in the appellate court that only one of those tests is essential? You need to cite authority. Well, we cite the Gerhardt's case where the trial court actually engages with the issue. In other words, this forfeiture argument was made to the district court. And the district court took up the merits of the argument. The district court is not us. So, the point I'm trying to make is that both parties were bound by the legal standards and the- of this court saying that an argument forfeited in the district court can properly be raised on appeal. Yes, Gerhardt's v. Rickard. I would say Gerhardt's v. Rickard is a case exactly like that. And Gerhardt's v. Rickard was a case in which a person had failed to raise the question whether or not a blood test had been taken without adequate exigency. The argument wasn't raised, and the district court had chosen to take up the merits of the argument anyway. And this court said that because the argument was- Look, I'm about to give up. The bankruptcy court never took up the argument that the balance sheet test was the sole permissible test. The usual way in which forfeiture arguments are phrased is that arguments never made or addressed in the trial court can't be resurrected. You're now citing a case dealing with an argument that was addressed in the trial court. Do you have a case dealing with arguments never made or addressed in the trial court? Well, the issue of insolvency was addressed in the trial court. I'm done. You're just not coping with my question. I'm sorry, Your Honor. The other case we cite for the standard of review, which is In re Marcus Rettmeyer, states that we apply the same standard of review as the district court. And we review the legal conclusions of both lower courts for whether they're compliant with law. So between those- this is a case in which the merits were fully litigated. It wasn't until the bankruptcy court rejected Sethkiw's evidence that showed that when you took account of all of the debtor's assets, there was nothing that could be characterized as insolvency, that it became important whether there was more than one definition of insolvency. Mr. Gabney, can I ask you about another issue that the parties raised, which is the timeliness of the claims? So under your argument, I take it as that's with regard to whether or not the trustees' claims were timely. Can you address for me your arguments with regard to that matter, please? The argument is that the Illinois Uniform Fraudulent Transfer Act, Section 10, is a statute of repose, which requires- that deems a right of action extinguished four years after the last event, and it's not subject to equitable tolling or anything else. But hasn't the Illinois Supreme Court applied equitable doctrines in dealing with statutes of repose? That argument- I have not seen that argument made. The trustee has made an argument in this case that Section 108 of the Bankruptcy Act renders the four-year period extendable. We say in our reply brief we don't believe that is correct. This Court's relevant precedent on that is Boyer against Crown stock distributors, and Boyer stated, an opinion judged by Judge Posner, that the filing of a bankruptcy petition- The filing of a bankruptcy petition was sufficient to invoke the four-year bar, and we believe- So I guess I'm looking at- the Supreme Court cases I'm thinking about are Witherall v. Weimer. That's 515 Northeast 2nd, 68, and that's the Supreme Court of Illinois, 1987, that applied the doctrine of equitable estoppel to a statute of repose. Not this one, but to a different statute of repose, as well as DeLuna v. Burciaga, which is 857 Northeast 2nd, 229. That's a 2006 case, again, Illinois Supreme Court, that applied equitable tolling to a statute of repose. It seems to me that while generally speaking, I think you're right, as a general matter, that statutes of repose aren't subject to an equitable doctrine, because after all, that's the whole purpose of a statute of repose, right? That the Illinois Supreme Court seems amenable, though, to apply equitable principles in addressing statutes of repose, and I was wondering whether you had a particular reaction to that proposition. I confess I'm not familiar with the doctrines that hasn't been raised. Well, let me, since your answer is you don't know, let me ask you a similar question to what Judge Easterbrook has asked about this timeliness thing. You note in your reply brief that you did contest it in bankruptcy court, but can you point us to where you did contest timeliness in your briefs or in the transcript in bankruptcy court? The only place it was contested was in the answer. The trustee alleged that the complaint was filed within the four-year look-back period, and Seth, you denied that. It was the trustee's burden to prove it. We are not relying on this as an independent ground for reversal in this case. We're saying that if the court reaches the merits, which we believe the court should do, that the bankruptcy court's own filings require that the judgment be reversed. There's never been a case in which less than all of a debtor's assets have been ignored, and the Palloyan v. LaSalle Bank rejected an analysis very similar to what was admittedly done here. In this case, 85% of the debtor's actual assets were disregarded in the analysis that the trustee put forward, and it does not satisfy any of the statutes. That's the key point. I just want to make sure I'm understanding you. So you are no longer relying upon the timeliness argument? No, we're arguing on the timeliness argument for the point that if the court reaches the merits of this appeal, which I believe are not forfeited and this court should at all events exercise discretion to reach, that judgment should be entered for SEFCU because there is no claim. The court could rely on timeliness as a basis for reversal, but in our brief we are relying on that because this was an issue that was not raised in the Supreme Court. To engage on the merits then, under Section 5A2 capital B, it says, you know, where the debtor intended to incur or believe or reasonably could have believed that it would incur debts beyond its ability to pay as they became due. Didn't some of the tests that the experts espoused address those issues, that is, you know, wouldn't things like cash flow analysis and things like that be relevant to the issue of whether or not a debtor could have believed that the debtor would be able to pay the debts or not as they became due? Absolutely right, but it's got to be all of the debtor's assets. The debtor's ability to pay, as on Boyer and every case this court has ever considered, looks to all of the debtor's ability to pay. And in this case, the two charts on page 14 of the blue brief sum up the problem here. The so-called cash flow test applied by the trustee's expert looked at one-seventh of the debtor's cash assets rather than all of it, which is the same type of error that this court rejected in the Palloyan case. The analysis in this case, there was no dispute, no factual dispute as to what the value actually was or what discount rate should be applied. You either look to the entirety of the debtor's ability to pay or only just one small piece of the debtor's ability to pay. Why then, since you want to talk about the merits, why then would the credit union's lawyer say, you know, the cash flow test is important here then? And I'm paraphrasing. Because he was using that to refer to the absence of any proof of a default on any debt. The debtor actually did pay its debts. There was no proof. This is why the parties talked past one another and accounting jargon ended up taking over the law in this case. So I realize I've come to the end of my time, so I appreciate the court's attention, but the merits should be reached in this case. Mr. McClintock. Good morning, Your Honors. May it please the court, Matthew McClintock, Counsel for the Trustee Sheldon Stone and the affilee in this matter. I first wanted to start by quickly addressing the timeliness issue because I think that one's fairly simple to address, and I know there was a lot of discussion about it. It's certainly our position that that argument was waived. Getting to Judge Lee's question, from our standpoint, we do think that this is probably a statute of repose, although, frankly, there's a lot of back-and-forth case law, and whether it's a statute of limitations or repose is not very clear in the case law within the Seventh Circuit. We certainly take the position, however, that that statute of repose is not jurisdictional in nature. I think a statute— I don't understand why there could be any jurisdictional question. The bankruptcy judge had jurisdiction. Statutes of limitations or repose have nothing to do with jurisdiction. And I agree, Your Honor. Now, was there any dispute in the bankruptcy court, or for that matter the district court, about whether this request was timely under Section 546A? There was not. That issue was not raised before the bankruptcy court or the district court. This is the first time— That requires the fraudulent conveyance action to be brought within two years of the order for relief.  Maybe I should have asked Mr. Dabney that, too. Yeah, the order for relief is the date that a debtor files for bankruptcy protection. And here, the action was brought two days prior to two years after the bankruptcy filing. And the one thing, beyond waiver on the substance of this timeliness issue, what I'd point the court to is that we discussed the 108 issue in our brief, that 108 provides two years if a statute of limitations hasn't expired on the petition date. 108 provides an additional two years to bring that cause of action. But what I'd also point the court to is that the appellant said, well, 108 doesn't apply to an action brought under 544 of the bankruptcy code. And I'll first say there's a lot of case law that says 108 does apply to 544, and that's cases within the Seventh Circuit. But what the appellant doesn't note is that Section 546 of the bankruptcy code is critical because it provides the exact same two-year period for bringing causes of action under Section 544 of the bankruptcy code. And there's myriad case law that both 108 and 546 toll the period for whether it's a statute of limitations or a statute of repose. So, again, whether you're relying on 108 or you're relying on 546, there is a two-year period from the bankruptcy petition, which is the order for relief, to bring this cause of action, and it's undisputed that the case was filed within that two-year period and was thus timely. With respect to kind of the other big-picture argument that the appellant makes, that is that the bankruptcy court applied the wrong legal standard for insolvency. And there, as we just heard, the appellant is arguing that there's only the balance sheet test under the Illinois Uniform Fraudulent Transfer Act and points to Section 3, so 160-3 of the Illinois Uniform Fraudulent Transfer Act for that definition. I'll get to it in a minute. I disagree with that. I think there's several tests for insolvency within that definition. But I think that the key thing for this court to think about is that the bankruptcy court ultimately ruled for my client on two independent bases of the Uniform Fraudulent Transfer Act. That was, number one, Section 5A2 and, second, under Section 6 of the Uniform Fraudulent Transfer Act. And if you look at Section 5A2, that section requires two things. It requires, first, a finding of that the transfer was for less than reasonably equivalent value. Here, the bankruptcy court had detailed findings on that. That's not challenged. Then, 5A2 requires one of either of two additional factors, and those factors are, number one is 5A2A. I'll read what the provision says. It says, basically, that the transfer, quote, was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. That is what case law calls the adequate capital test. And the bankruptcy court made very detailed findings. That's at A47 to 48, that the adequate capital test wasn't met, that basically the bankruptcy. Well, I take one of Mr. Dabney's points to be 5A2 doesn't discuss insolvency on its face. Is your response then, well, you know, look at this part you just cited. It's obviously talking about this adequate capital test. If you're using it to apply it to the Illinois Act. Correct. The court, it made very detailed findings on that specific issue. It was a whole section of the opinion devoted to the factual findings to determine whether the adequate capital test was met. And the court found that it wasn't. And so, hence, you know, it was appropriate to find for the trustee that this, under this particular section. I think where I understand the appellant takes issue is that the bankruptcy court reached the opinion also that the debtor was insolvent as a result of that finding. But, again, the bankruptcy court made the independent finding that the adequate capital test, that the debtor at the time of the transfer failed the adequate capital test. So I think, again, you don't even have to get to insolvency to affirm that portion of the bankruptcy court's judgment. And I think the very similar thing applies to the other prong of 5A2, which is 5A2B. Because, again, the trustee really only needed to prove lack of reasonably equivalent value and then one or the other of the two subsections. So 5A2B, and, again, I'll read what it says, it says basically did the transferor intended to incur or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they come due. And that is what courts always refer to as the cash flow test. And, again, the bankruptcy court had very detailed findings specifically on the cash flow test. And that's at A40 to 47. And, again, largely based on the fact that. Can we zoom out to where I think Mr. Dabney wants us to take us this morning on the waiver point? I heard him to be saying we clearly didn't waive because we were discussing insolvency writ large. Insolvency is a large subject in bankruptcy court. And that's sufficient to avoid waiver here. Your response? I mean, I was addressing the substance here of the bankruptcy court's ruling. Right. That's why I wanted to zoom in. And I agree, Your Honor. I mean, we certainly view this as waive. I mean, the bankruptcy court was very clearly addressing. I mean, it listed out these particular provisions of the Illinois Fraudulent Transfer Act that I'm addressing. It listed those provisions, and then it went through the elements of each thing, the cash flow test, the adequate capital test. The parties, everyone stipulated or, again, put aside expert reports. Even in the briefing, none of the parties contested that there was not three different tests for insolvency. So the bankruptcy court did find that based on each test the debtor was insolvent. But, again, you could almost ignore that. It was almost a superfluous finding because it separately found that the cash flow test was failed, that the adequate capital test was failed. So it almost doesn't matter. So I certainly have no idea how this argument wasn't waived. It was not raised at all at the bankruptcy court level. And I will note also that the bankruptcy court beyond 5A2, the bankruptcy court also ruled for the trustee under Section 6, so 6A2 of the Illinois Uniform Fraudulent Transfer Act. And that section, again, it requires reasonably equivalent value or lack of reasonably equivalent value, which is undisputed. And then that requires either that the debtor was insolvent or became insolvent as a result of the transaction. And here's where I differ a little bit from the appellant, is that if you look at the definition of insolvency, which is at 160-3, the appellant argues that it's solely balance sheet insolvency, as you heard. But if you look at subsection B there, there's also a presumption of insolvency if a debtor is not paying its debts when due. And how do courts analyze that Section B? If you look at the case law interpreting it, they look to the cash flow test. And we just talked about that the bankruptcy court made very detailed findings that this entity failed the cash flow test for the relevant period, which, by the way, the court properly found the relevant period for the cash flow test to be one year. And it found that because almost all of the company's debts were coming due within that one-year period. So that was the appropriate time to analyze the cash flow test. But again, because the court had found that this entity failed the cash flow test, it also found that, again, it fell within the definition of 160-3 as insolvent, and so thus it found for the trustee under Section 160-6. So in sum, certainly from our position, again, this action was timely. The timeliness argument was, in any event, waived. And in addition, this entire insolvency argument, number one, was waived and is directly contrary to what was argued at trial. But number two, even if it wasn't waived, again, most of the bankruptcy court's ruling really wasn't even dependent on a finding of insolvency. So happy to answer any other questions. Otherwise, I'll cede the podium. Thank you very much, counsel. The case is taken under advisement.